[No. 3851.   Decided July 16, 1901.]

*In the Matter of the Estate of* C. S. SMITH, *Deceased; J. P.* HAMILTON, *Appellant,* v. E. M. TURPIN *et al., Respondents.*

DESCENT AND DISTRIBUTION—FUNERAL EXPENSES—WHEN CHARGED
   UPON DECEDENT'S ESTATE.

Funeral expenses constitute a debt against a decedent, within the contemplation of Laws 1895, p. 197, which provides that "no real estate of a deceased person shall be liable for his debts unless letters testamentary or of administration be granted within six years from the date of the death of such decedent."

SAME—STATUTE OF LIMITATIONS.

Under Laws 1895, p. 197, § 1, which provides that when a person dies seized of lands, his title shall vest immediately in his heirs or devisees, subject to his debts, family allowance, expenses of administration, etc., and under ·§ 3 of the act, which provides that such real estate shall not be liable for the decedent's debts, unless letters testamentary or of administration be granted within six years after his death, the real estate of a decedent is charged with such debts only in case letters were issued within the period of limitation, and where more than six years have elapsed before the issuance of letters the real estate cannot be charged with said debts.

Appeal from Superior Court, Thurston County.—Hon. OLIVER V. LINN, Judge.  Reversed.

*Troy & Falknor,* for appellant.

*D. E. Baily* and *J. W. Robinson,* for respondents.

The opinion of the court was delivered by

MOUNT, J.—On or about November 10, 1891, one C. S. Smith died in Thurston county, Washington, leaving a will, by which he bequeathed all his real and personal property to certain persons.  In said will he nominated F. E. Thompson, E. K. Pitman, and T. W. Silvers, all non-residents of the state of Washington, as executors to

serve without bonds. Said will was thereafter, on November 30, 1891, upon application of said Thompson, admitted to probate in Thurston county, and said Thompson and Silvers were appointed executors thereof. Said executors never took the oath of office, and were not qualified to act as executors by reason of non-residence. The property of deceased was, however, appraised, and the appraisement filed. This appraisement showed real estate of the value of $3,300, personal property of the value of $36, and cash on hand $76.80. On November 14, 1892, Harned & Bates Bros. filed with the clerk of the court a claim against the estate for funeral expenses amounting to $112.50. On November 29, 1892, R. H. Jones filed with said clerk a claim against the estate for funeral expenses amounting to $15. Nothing more was done in said estate until June 7, 1900, when Eunice M. Turpin and R. H. Jones, claiming to be creditors of said estate, filed a petition, praying that the order appointing said executors, and all orders made in said estate, except the order admitting said will to probate, be set aside, and held for naught, and for a special administrator thereof. The court thereupon made an order appointing F. G. Blake special administrator. Subsequently, and on June 21, 1900, upon the same petition, the court made an order finding that the appointment of said executors was void and of no effect, and setting aside all orders made in said estate except the order admitting said will to probate, because all were null and void, and appointed said Blake administrator with the will annexed. Said Blake thereafter qualified, and filed his bond as such administrator, appraisers were appointed, the real estate left by said Smith was appraised in the sum of $880, as belonging to said estate, and no personal estate was found. On August 15, 1900, the said claims above mentioned were approved by said administrator and the court. On August

16, 1900, a petition was filed by said administrator for the sale of the real estate for the payment of expenses of administration and the said debts. When this petition came on for hearing, appellant, claiming to have purchased a part of said real estate after the death of deceased, upon foreclosure of a mortgage executed by deceased prior to his death and the balance thereof from the heirs of deceased after his death, appeared, and objected to the court granting said petition, and ordering sale thereof, for the reason (1) that the said claims, and each thereof, had been long since barred by the statute of limitations; (2) that no letters having been issued for a period of six years after the death of decedent, said real estate could not, under the law, be sold for the payment of said debts, or any debts of the estate; (3) that appellant having purchased said property from the heirs, and having been in possession for a long period of time, paying taxes thereon, the petitioner is now estopped by reason of laches to enforce such claim against said real estate. These objections being overruled, and exceptions taken, the court made an order directing sale of said real estate, and allowed the appellant exceptions thereto. From this order this appeal is prosecuted.

The record in this case discloses the fact that no letters testamentary were issued in the said estate after the death of the deceased until June, 1900, more than eight years after his death. If any were in fact issued to the executors named, the record does not disclose that fact. But, even if they were issued, the order issuing them was by the court subsequently declared null and void and of no effect, so that the result is the same whether they were in fact issued or not. In 1895 the legislature passed an act relative to descent of real property (Laws 1895, p. 197), the title of which is as follows: "An act in relation to descent of real estate of deceased persons and sales thereof

by executors and administrators, and quieting titles acquired by descent." Section 1 provides that when a person dies seized of lands, his title shall vest immediately in his heirs or devisees, subject to his debts, family allowance, expenses of administration and any other charges to which such real estate is liable under existing laws. Section 2 provides that the act shall apply to and govern estates of persons hereafter dying, as well as persons already deceased. Section 3 is as follows:

"No real estate of a deceased person shall be liable for his debts unless letters testamentary or of administration be granted within six (6) years from the date of the death of such decedent."

Section 6 provides that when a person has been deceased for more than six years prior to the going into effect of the act, letters may be issued within one year after the act takes effect. It seems clear that if funeral expenses may be classed as a debt against the deceased, then the facts in this case fall squarely within the terms of this act, and the court has no power to order a sale of any of the real estate of decedent, because letters were not issued within six years. Respondents, in order to overcome this, argue that funeral expenses are not in law a debt of the decedent, but are purely a part of the expenses of administration. The authorities cited do not go to the extent claimed. *In re Sullivan's Estate, ante,* p. 430, decided by this court July 2, 1901, which goes further than any of the authorities cited by respondents, it was held that the term "creditors," as used in § 6141, Bal. Code, relates only to such as were creditors of the deceased at the time of his death, or to holders of. obligations created by the deceased himself. The question under consideration in that case was the right to administer upon the estate, where several persons claiming to be creditors were demanding the right of administration, and the court held that a creditor for fu-

neral expenses was not such a creditor as was meant by that section. It was not held that these expenses were a part of the expenses of administration, nor was it held that they were not a debt against the estate. Section 6333, Bal. Code, provides that: "The debts of the estate shall be paid in the following order: 1. Funeral expenses; 2. Expenses of the last sickness; 3. Debts having preference, . . . " indicating clearly that funeral expenses are a debt against the estate and given preference in payment. The act of 1895 above referred to, was evidently passed, as the title states, for the purpose of quieting titles acquired by descent, and should be construed so as to give force to this purpose. To hold that real estate of a deceased person, under said act, is liable for debts of any class,—either of those contracted by decedent before his death, or those contracted after for funeral expenses, or in administration, after the six years had expired,—would be to defeat the object of the act. When the legislature used the language, "no real estate of a deceased person shall be liable for his debts, unless letters testamentary or of administration be granted within six years from the date of the death of such decedent," it meant to say all debts of all classes; otherwise, the question of title would not be quieted until after administration, and after all expenses thereof had been paid,—the funeral expenses, expenses of the last sickness, family allowance, and of administration. This was the very object sought to be avoided by the act. If these classes of debts may be enforced against the real estate after six years, their enforcement would in many cases, no doubt, not only cloud titles, but absolutely defeat titles. There is no question under this act that the real estate is subject to all these claims, provided letters are issued within six years of the death of the owner. It is urged that the provision in § 1 of the said

act, that the title vests "subject to his debts, family allowance, expenses of administration, and any other charge for which such real estate is liable under existing laws," indicates that the real estate is stamped with these charges. This contention is correct within the limitations provided, viz., when letters are granted within six years after the death of decedent, but after the six years no real estate shall be so charged. This construction of the act, it seems to us, is reasonable, and gives ample time for all classes of creditors to make their claims out of the estate, and ample time for administration upon the estate. In this case these claims were on file for eight years without any steps being taken to collect them. Diligence, it seems, would have required that some action be taken thereon before this length of time, and that where appellant had purchased and taken possession of the real property in good faith, and paid taxes amounting to a large sum, he should not be disturbed in his possession after such length of time.

The judgment is reversed, with directions to the lower court to sustain the objections, and dismiss the petition to sell the said real estate.

REAVIS, C. J., and FULLERTON, HADLEY and WHITE, JJ., concur.

ANDERS, J., concurs in the result.